IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GUNTY *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 8:25-cv-00928-PX |
| | * | |
| | * | |
| CLANCY *et al.*, | * | |
| | * | |
| Defendants. | | |

******

**MEMORANDUM OPINION**

Pending in this action are the following motions: Plaintiff Murry Gunty ("Gunty"), Blackstreet Capital Holdings, LLC ("Blackstreet") and Black Bear Sports Group, Inc. ("BBSG") (collectively, "Plaintiffs")' motion to disqualify counsel (ECF No. 7) and motion to remand (ECF No. 13), and Brian Clancy ("Clancy") and Clanko Media ("CM") (collectively, "Defendants")' motion to dismiss (ECF No. 12). The Court finds no need for a hearing. *See* D. Md. Loc. R. 105.6. For the following reasons, the Court denies the motion to disqualify counsel as moot, denies the motion to remand, and grants the motion to dismiss for lack of personal jurisdiction.

**I.   Background**

According to the Complaint, Plaintiff BBSG is a privately held company headquartered in Bethesda, Maryland that invests in hockey arenas and youth hockey teams and leagues. ECF No. 3 ¶ 1. Plaintiff Blackstreet is an investment firm also based in Bethesda, and Plaintiff Gunty resides in Maryland and jointly owns BBSG with Blackstreet. *Id.* ¶¶ 2–3. Gunty also serves as the Commissioner of the United States Premier Hockey League ("USPHL"), which is "the largest junior hockey league in North America" for young athletes with aspirations of playing hockey in

1

college.  *Id.* ¶¶ 3, 10.  Both BBSG and USPHL generate revenue through service contracts issued to young players.  *Id.* ¶ 10.

Defendant Clancy, a youth hockey blogger, lives in New Jersey and owns CM, a New Jersey digital media and production company that provides filming services for youth hockey players, including teams "based in Maryland [that] play in BBSG rinks in Maryland."  *Id.* ¶¶ 4–5.  Clancy also operates CM's social media accounts to showcase hockey-related content.  CM has over 1,200 followers on X, 11,000 subscribers on YouTube, and 18,000 followers on Instagram.  *Id.* ¶ 11.

In the Spring of 2024, Clancy began disparaging Plaintiffs via internet posts after Gunty became Commissioner of USPHL.  ECF No. 3 ¶ 13.  Clancy, for example, posted that CM is "[p]roudly blocked by @murrygunty," referring to Gunty's X account.  *Id.* ¶ 12.  Clancy also falsely posted that the "Black Bear National Academy's inaugural season for its 18-and-under team was cancelled during its tryout period."  *Id.* ¶ 17.  Clancy further expressed that he will "forever be disappointed" that BBSG team hockey director, Rob Broderick, "chose to associate" with Plaintiffs and urged that he "[c]ome back to Rockets Brod!!"  *Id.* ¶ 22.  Clancy also called BBSG a "notorious fee collector;" claimed the "NCDC Main camp" was "#StealingYourMoney;" and falsely stated that Black Bear TV, one of Plaintiffs' streaming platforms, would no longer be streaming the games.  *Id.* ¶¶ 30–31, 33.

As to teams based in Boston and Pennsylvania, Clancy expressed interest in whether BBSG's Youngstown Phantoms' assistant general manager Jeff Cox "'ever' confronted Mr. Gunty with past criticisms Defendants allege Mr. Cox made about the USPHL."  ECF No. 3 ¶ 23.  CM also posted on Instagram that "two Boston area-based USPHL member teams required their players to drive themselves to weekend games in Utica, New York, in violation of league policies

2

and junior hockey league standards." *Id.* ¶ 26. Defendants also posted that USPHL was "begging" teams to play the Boston Dogs, a new member of the USPHL, and falsely claimed that the Boston Dogs would only play the "Rangers, Railers, and Spartans . . . 12 times each[.]" *Id.* ¶ 29.

Plaintiffs allege, without any factual basis, that Clancy's posts have "harmed" their recruiting efforts in Maryland and tarnished their Maryland based showcases, teams, and arenas. ECF No. 3 ¶¶ 37–38. They also contend that the statements about Black Bear National Academy caused at least "four prospective players" to decline the Academy team, causing a loss of $60,000. *Id.* ¶¶ 19, 37–39.

On February 6, 2025, Plaintiffs filed suit in Montgomery County Circuit Court against Defendants, alleging defamation and other common law claims. ECF No. 1-1. On March 20, 2025, Defendants removed the case to this Court, asserting diversity jurisdiction. ECF No. 1. *See* 28 U.S.C. § 1332. Plaintiffs next moved to remand the matter, and Defendants moved to dismiss the action for lack of personal jurisdiction. ECF Nos. 12, 13. Plaintiffs also moved to disqualify Defendants' counsel, Kiernan Trebach LLP, because the firm had represented BBSG in a separate matter. ECF No. 7 at 1. Kiernan Trebach LLP ultimately withdrew from the case and the parties agreed that new defense counsel would refile its dismissal motion. Because Kiernan Trebach, LLC has voluntarily withdrawn from representing Defendants, the motion to disqualify is denied as moot. The remaining motions are resolved as follows.

**II.    Analysis**

**A. Plaintiffs' Motion to Remand**

The parties do not dispute that the matter is properly removed pursuant to the Court's diversity jurisdiction. *See* 28 U.S.C. §§ 1332 & 1441. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Plaintiffs instead argue that because original defense counsel was

3

conflicted, the conflict renders "defective" the notice of removal that counsel had filed. ECF No. 13-1. Although Plaintiff is correct that a defect in the removal procedure can warrant remand, *see* 28 U.S.C. § 1447(c), *Jamison v. Wiley*, 14 F.3d 222, 240 n.12 (4th Cir. 1994), they fail to show that a conflict with counsel amounts to such a "defect." 28 U.S.C. § 1446(b) governs the timing and conditions of removal with multiple defendants. Defective removal, thus, naturally concerns a failure to comply with § 1446(b), such as "[a]n untimely removal notice or any '[f]ailure to comply with the requirements of § 1446(b) constitutes a defect in removal procedure.'" *Bazilla v. Belva Coal Co.*, 939 F. Supp. 476, 477 (S.D.W. Va. 1996) (quoting *Page v. City of Southfield*, 45 F.3d 128, 131 (6th Cir.1995)) (internal quotation marks omitted). *See also Link Telecomms., Inc. v. Sapperstein*, 119 F. Supp. 2d 536, 542 (D. Md. 2000). But nothing in the statutory scheme warrants remand simply because the lawyer who filed the notice had a waivable conflict.

Plaintiffs try to convince the Court it should expand the remand criteria to reach the circumstance here based on a misreading of *Reading Int'l, Inc. v. Malulani Grp., Ltd.*, 814 F.3d 1046, 1053 (9th Cir. 2016). There, the Ninth Circuit, applying Hawaii state law, assessed whether conflicted counsel's prior representation warranted the request to strike appellant's reply brief. *Id.* The court's discretionary decision to strike a filing bears no resemblance to the decision this Court faces—which is, whether to remand a timely removed matter because counsel for Defendant at the time possessed a waivable conflict. Plaintiffs cite no pertinent authority that compels remand in this circumstance. And given that conferral of jurisdiction derives "entirely from the statutory authorization of Congress," *Link Telecommunications, Inc*, 119 F.Supp.2d at 540, absent a defect in the statutory removal procedure, the Court will not remand based on *Reading Int'l, Inc. v. Malulani Grp., Ltd.*[1] The Court next turns to the motion to dismiss.

---

[1] The parties also seem at war about the scope of their "agreement" regarding prior counsel's withdrawal from the case. ECF No. 16 at 2, 4. Although the parties agreed that withdrawal of Kiernan Trebach LLP

**B. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction**

Turning next to Defendants' motion to dismiss for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the Court construes the Complaint facts as true and most favorably to the Plaintiffs to determine whether the Plaintiffs have established jurisdiction. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003); *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019). The Court may also consider evidence beyond the four corners of the Complaint necessary to ascertain the existence of jurisdiction. *Hawkins*, 935 F.3d at 226. But if "the facts present even a close question" on the existence of jurisdiction, the court should dismiss the action or transfer the case to where jurisdiction is evident. *Dring v. Sullivan*, 423 F. Supp. 2d 540, 549 (D. Md. 2006).

The Court may exercise either specific or general personal jurisdiction over a defendant. *Carefirst of Md, Inc.*, 334 F.3d at 396 (citing Fed. R. Civ. P. 4(k)(1)(A)); *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). Plaintiffs invoke only specific jurisdiction. ECF No. 15 at 14 n.4. Thus, the Court confines its analysis accordingly.

To demonstrate the existence of specific personal jurisdiction, a plaintiff must show the defendant meets the requirements of the forum state's long-arm statute and that the exercise of jurisdiction satisfies due process. *Christian Sci. Bd. of Dir. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Maryland's long-arm statute confers personal jurisdiction under a variety of circumstances, but only two are relevant here. The Plaintiffs argue that this Court retains personal jurisdiction because the Defendants "[t]ransact any business or

---

would moot the motion to strike, and that new counsel would withdraw and refile the motion to dismiss, they were silent as to the effect of the conflict on the notice of removal, or as to whether the agreement covered the motion to remand. ECF No. 18-1. Thus, the Court will not speculate as to what the parties intended. If anything, the agreement strongly suggests that they expected this Court would retain jurisdiction to hear the refiled dismissal motion.

perform[] any character of work or service in the State." Md. Code, Cts. & Jud. Proc. § 6-103(b)(1); or because the defendants "[c]aus[ed] tortious injury in the State or outside of the State by an act or omission outside the State . . . [and] regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State[.]" *Id.* at (b)(4); ECF No. 15 at 14. The Court considers each basis separately.

First, relying on § 6-103(b)(1), Plaintiffs argue that CM's "video services for young hockey players, including those playing . . . for teams that are based in Maryland and play in BBSG rinks in Maryland" is sufficient to establish the corporation "regularly transacts business" in the state. ECF No. 15 at 16. Importantly, "the phrase ['transact business'] is narrowly construed and typically requires [a showing of] 'significant negotiations or intentional advertising' in [the forum state]." *Fidelis Cybersecurity, Inc. v. Partner One Cap., Inc.*, 771 F. Supp. 3d 614, 630 (D. Md. 2025) (quoting *Aphena Pharma Sols.-Md. LLC v. BioZone Lab'ys*, Inc., 912 F. Supp. 2d 309, 315 (D. Md. 2012)) (collecting cases). "[B]usiness practices only tenuously connected to the cause of action are not enough to confer specific jurisdiction." *Phillips v. Brit. Airways*, 743 F. Supp. 3d 702, 711 (D. Md. 2024).

Plaintiffs provide no factual detail to support the argument that Defendants *regularly* transact business in Maryland. Defendant Clancy, by contrast, has attested that neither he nor CM "had ever conducted any business in Maryland" at the time the Complaint had been filed, and Defendants do not "sell videos, YouTube, subscriptions, or merchandise in Maryland." ECF No. 12-2 ¶¶ 4, 10. While the Court must construe all averred facts most favorably to the Plaintiffs, it cannot blindly accept mere conclusory legal statements couched as fact. *Ashcroft v. Iqbal*, 556

U.S. 662, 663 (2009). Accordingly, Plaintiffs have failed to show that Defendants' business activities are sufficient to confer jurisdiction under § 6-103(b)(1).

Alternatively, § 6-103(b)(4) permits jurisdiction over an out-of-state defendant who "causes tortious injury in the State," and either "regularly does or solicits business" in the state or "derives substantial revenue" in the state. As just discussed, no averred facts show that Defendants either regularly solicited or conducted business in Maryland. Nor have Plaintiffs shown that Defendants have earned *substantial* revenue through any sales of goods or services. Bald allegations of earning some nonspecific "revenue" are not enough. ECF No. 15 at 19. *Contrast Covington v. Am. Airlines, Inc.*, No. CV MJM-22-725, 2023 WL 2648782 (D. Md. Mar. 27, 2023) (American Airlines deriving substantial revenue in Maryland from ticket sales), *with Nat'l Fire & Marine Ins. Co. v. Advanced Lighting Techs. LLC*, JRR-22-02723, 2023 WL 6147563, at *6 (D. Md. Sept. 20, 2023) (defendant's "one-time contract four years ago" worth $560.47 "falls far short" from substantial revenue).

Plaintiffs, in response, press that Defendants' robust online presence is sufficient to infer that § 6-103(b)(4) is satisfied. ECF No. 15 at 19. Although the Court disagrees, even if Plaintiffs are correct that Defendants' online presence suggests they have generated much Maryland business, the application of the long-arm statute in this circumstance cannot satisfy due process. *Cf. ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002).

To ascertain whether exercise of jurisdiction would comport with due process, the Court must consider "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc*, 293 F.3d at 712 (internal quotation marks omitted). According to the

Fourth Circuit, "specific jurisdiction in the Internet context may be based only on an out-of-state person's Internet activity directed at Maryland and causing injury that gives rise to a potential claim cognizable in Maryland."  *Id.* at 714.

The Fourth Circuit clarified this standard in *Young v. New Haven Advoc.*, 315 F.3d 256 (4th Cir. 2002).  There, the Court held that a Connecticut-based newspaper did not have sufficient contacts with Virginia when it published an article about the conditions of a Virginia prison and the warden responsible for running the facility.  *Young*, 315 F.3d at 258–63.  The due process inquiry focused on "whether the newspapers manifested an intent to direct their website content . . . to a Virginia audience," and whether the newspaper "through the Internet postings, manifest[ed] an intent to target and focus on Virginia readers."  *Id.* at 263.  The Court answered in the negative, finding that the "thrust and content" of the newspaper articles were not directed at Virginia readers.  *Id*.  Thus, the exercise of personal jurisdiction did not satisfy due process.

Applying the teachings of *Young* to this case, the great majority of the Defendants' alleged internet activity is aimed at BBSG teams and audiences outside of Maryland.  *See supra*, at 2–3; ECF No. 12-1 at 12–13 (Black Bear National Academy in Philadelphia, the Mercer Chiefs in Hamilton Township, New Jersey, the Youngstown Phantoms in Pittsburgh, the Ashburn Rebels in Ashburn, Virginia, and "two Boston area-based USPHL member teams").[2]  Further, none of the alleged defamatory statements even mention any team or individual residing in Maryland.  And the mere presence of the Plaintiffs' residency in Maryland through its arenas, camps and showcases does not mean that Defendants' social media posts were *directed* at a Maryland audience.  *See, e.g.*, *Adewami v. Arise Media Inc. (Nigeria)*, No. PJM-23-01065, 2024 WL 3161746 (D. Md. June

---

[2] The Court takes judicial notice of BBSG's website pursuant to Federal Rule of Evidence 201.  *See Coastal Lab'ys, Inc. v. Jolly*, 502 F. Supp. 3d 1003, 1011 (D. Md. 2020) (In ruling on a motion to dismiss, "[t]he Court may consider . . . matters of which a court may take judicial notice.").

25, 2024) (newspaper article catering to African audiences was not directed at the forum state simply because thousands of Nigerian immigrants live in forum state). Nor is Defendants' knowledge that Gunty lived in Maryland at the time they were supposedly defaming him sufficient to confer personal jurisdiction. *See Dring*, 423 F. Supp. 2d at 548 (defendants emailing Maryland plaintiffs with knowledge that plaintiffs resided in Maryland insufficient to confer personal jurisdiction). Because the Complaint does not make plausible that Defendants exhibited "'manifest intent' of targeting Marylanders," as opposed to hockey audiences throughout the country, exercising personal jurisdiction over Defendants would violate due process. *Carefirst of Md., Inc.*, 334 F.3d at 400 (quoting *Young*, 315 F.3d at 264). *See also Hart v. Carver*, No. JRR-23-03499, 2024 WL 4025837, at *8 (D. Md. Sept. 3, 2024) (tweeting offending statement to plaintiff's Twitter account while she was in Maryland, even if accessed by Maryland readers, was "plainly inadequate to satisfy due process" because nothing reflects defendant had "targeted a Maryland readership."). The motion to dismiss for lack of personal jurisdiction, therefore, must be granted.[3]

Lastly, Plaintiffs press that if the Court is inclined to grant the motion, it should instead order jurisdictional discovery. ECF No. 15 at 23–24. But "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery[.]" *Carefirst of Md., Inc.*, 334 F.3d at 402. Because Plaintiffs provide "nothing beyond mere speculation" of what discovery is necessary to establish Defendants' minimum contacts with Maryland to confer jurisdiction, discovery appears likely an exercise in futility. *Baumgarten v. Belsky*, No. GJH-19-374, 2020 WL 3447753, at *3 (D. Md. June 24, 2020). The Court, therefore, will not order jurisdictional discovery.

---

[3] Because dismissal is appropriate on jurisdictional grounds, the Court will not reach the merits of Defendants' remaining arguments. *See Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 94 (2017).

### III.     Conclusion

For the foregoing reasons, Defendants' motion to dismiss for lack of personal jurisdiction is granted, Plaintiffs' motion to remand is denied, and Plaintiffs' motion to disqualify counsel is denied as moot.  A separate order follows.

| | |
|---|---|
| 1/20/2026 | /s/ |
| Date | Paula Xinis<br>United States District Judge |